Christopher D. **BODKIN**, Plaintiff,

v.

Robert **GARFINKLE**, Individually and as Republican Commissioner of the Suffolk County Board of Elections and Anita Katz, Individually and as Democratic Member of the Suffolk County Board of Elections, Defendants.

No. CV 05–4306.

United States District Court,
E.D. New York.

Jan. 30, 2006.

Eliot F. Bloom, Mineola, NY, for Plaintiff.

Christine Malafi, Suffolk County Attorney, Hauppauge, NY, by Dennis M. Brown, Assistant County Attorney for Defendant.

*MEMORANDUM AND ORDER*

WEXLER, District Judge.

This is a civil rights action commenced by Christopher Bodkin ("Bodkin" or "Plaintiff") alleging a violation of state law and of Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution. Named as defendants are Robert Garfinkle ("Garfinkle") the Republican member of the Suffolk County Board of Elections ("BOE") and Anita Katz ("Katz"), the Democratic member of the BOE (collectively "Defendants"). This case follows

state court litigation in which Plaintiff emerged victorious in his effort to be placed on the Republican Party ballot for a primary election to a position on the Town Council of the Town of Islip. It also follows Bodkin's subsequent election to the office sought.

Despite his victory, Bodkin claims a violation of his federal constitutional rights by Defendants when they made the initial decision to deny his application to be placed on the ballot. According to Plaintiff, his rights were violated when Defendants made a "predetermined, willful and malicious decision to reject his candidacy out of hand." Presently before the court is Defendants' motion to dismiss.

## BACKGROUND

### I. Bodkin's Effort To Be Placed On The Primary Ballot: Action of the BOE

This case emerges out of the 2005 election for members of the Town Council of the Town of Islip. Facts recited below are gleaned from the complaint and taken as true at this point in the proceedings. Facts are also drawn from state court judicial records presently before the court. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002) (in context of motion to dismiss court may consider matters of which judicial notice may be taken as well as documents in plaintiff's possession which are relied upon in bringing suit). To the extent that the parties have submitted factual affidavits, facts set forth therein are not properly before the court in the context of a motion to dismiss and are therefore not considered.

On July 14, 2005, Plaintiff submitted his nominating petition to the BOE.[1] On July 18, 2005, general objections were filed with the BOE. Specific objections to the peti-

tion were filed on July 25, 2005. On July 29, 2005, the BOE, by the votes of Defendants Garfinkle and Katz, voted to invalidate the petition.

### II. State Court Litigation

#### A. The Order To Show Cause

Shortly after the BOE voted to invalidate his nominating petition, Plaintiff submitted an order to show cause in New York State Court contesting the BOE decision. Papers submitted in support of the application alleged that the nominating petition was in proper form and contained more than the minimum number of signatures required by law. While Plaintiff acknowledged the submission of objections to the BOE on July 18 and 25, 2005, he alleged that those objections were "insufficient, defective and invalid." It was further alleged that the determination of the BOE was made in violation of the rules of the BOE and in violation of the New York State Election Law. There were neither allegations of malicious conduct nor of any constitutional violation. Plaintiff sought a ruling that his nominating petition was valid and an order placing his name on the ballot.

#### B. State Court Decision

The State Court Justice to whom the matter was originally assigned recused himself as did other Suffolk County Justices. A hearing was ultimately held on Plaintiff's application before a Nassau County Justice of the New York State Supreme Court. On August 19, 2005, that court reached a decision on Plaintiff's application. The decision noted that 2000 valid signatures were required to place Plaintiff's name on the ballot. It was further noted that 4400 signatures were sub-

---

1. The petition was submitted on behalf of Bodkin and candidate Steven J. Flotterton. All proceedings at the state level were made

with respect to both candidates. The claims here are pursued only by Bodkin.

mitted and that objections were raised to approximately 3500 of those signatures. The court directed the BOE to report specifically as to the identity of the signatures that were rejected and noted that the BOE produced only one page of minutes and a worksheet that failed to identify the signatures rejected. The court held that the actions of the BOE created an "unusual dilemma" that precluded effective review of its decision. Holding that the New York State Election Law gives a presumption of validity to signatures on nominating petitions, the court held that the petition to invalidate the decision of the BOE should be granted and directed that Plaintiff's name be placed on the ballot.

The decision of the trial court was appealed and thereafter reversed by the Appellate Division of the Supreme Court, Second Department. The Appellate Division held that Supreme Court erred in vacating the decision of the BOE. Specifically, it was held that it was the court's responsibility, and not that of the BOE, to address the validity of each of the objections filed. The matter was remitted to the trial court "for a line-by-line consideration" of the nominating petition in light of specific objections.

On September 7, 2005, a second Justice of the Supreme Court, Nassau County, issued a decision after consideration of the line-by-line review mandated by the Appellate Division. That decision directed the BOE to place Plaintiff's name on the primary ballot. Plaintiff won the primary election and was thereafter elected to the Town Council.

### III. *The Federal Complaint*

Despite his state court and election victories, Plaintiff continues to litigate the matter of the propriety of Defendants' July 29, 2005 decision to invalidate his nominating petition. In the context of this federal action, Plaintiff asserts that Defendants' "acted with actual malice ... and with willful and wanton indifference to and deliberate disregard for [his] statutory and constitutional rights." It is further alleged that Defendants acted "intentionally, and in knowing disregard for the law, in voting for, and causing", the invalidation of Plaintiff's petition, which was "proper and valid."

The complaint alleges a deprivation of Plaintiff's federal constitutional rights to due process and equal protection. Defendants are alleged to be individually liable and liable for conspiracy to violate these rights. As to the equal protection claim, Plaintiff claims disparate treatment based upon the difference between his political goals and those of competing Republican candidates. Plaintiff's complaint also contains a state law cause of action alleging that the denial to place his name on the ballot violated "numerous provisions of the New York State Election Law." With regard to damages, Plaintiff claims a deprivation of constitutional rights as well as monetary loss. He seeks compensatory damages in the amount of $200,000 and exemplary damages in the amount of $2 million.

### IV. *The Motion To Dismiss*

Defendants move to dismiss on various grounds. First, it is argued that the *Rooker–Feldman* doctrine, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), deprives this court of subject matter jurisdiction because Plaintiff's claim is nothing more than an attempt to seek review of the state court decision. Next, it is argued that ordinary principles of collateral estoppel (issue preclusion) bar this litigation. Defendants further allege that Plaintiff fails to properly allege facts in

support of his due process, equal protection and conspiracy claims. After outlining relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

### I. Standards for Granting A Motion To Dismiss

Defendants' motion is made in the context of a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000). When considering a motion to dismiss for failure to state a claim, the court can consider only the facts as set forth in the complaint or documents attached thereto. When considering the facts pled, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 63 (2d Cir.1997). A complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). With these principles in mind, the court turns to the merits of Defendants' motions.

### II. Rooker–Feldman

In light of the fact that application of the *Rooker–Feldman* doctrine deprives a district court of subject matter jurisdiction, it is appropriate to decide this issue as a threshold matter. In the recently decided case of *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), the Supreme Court discussed the *Rooker–Feldman* doc-trine and noted that lower federal courts had sometimes interpreted the doctrine far beyond the intent of the original cases. Such interpretation was held to have resulted in "overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superceding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Exxon,* 125 S.Ct. at 1521. The Court specifically rejected the Second Circuit's interpretation of the *Rooker–Feldman* doctrine and held that it was to be limited to those cases commenced by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 1521–22 (rejecting broad interpretation of *Rooker–Feldman* as set forth by Second Circuit in *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195 (2d Cir. 1996)).

Guided by *Exxon,* the Second Circuit has recently set forth a four part test to be applied when determining whether *Rooker–Feldman* deprives a federal district court of subject matter jurisdiction. *See Hoblock v. Albany Cty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005). *Hoblock* holds that *Rooker–Feldman* applies only if four conditions are met:

- the federal-court plaintiff must have lost in state court;

- the plaintiff must complain of injuries caused by a state-court judgment;

- the plaintiff must invite district court review and rejection of that judgment, and

- the state-court judgment must have been rendered before the district court proceedings commenced (explaining that *Rooker–Feldman* has no application to

federal-court suits proceeding in parallel with ongoing state court litigation).

*Hoblock*, 422 F.3d at 85 (citations omitted).

■ When *Rooker–Feldman* is analyzed along these narrow lines, it becomes clear that the doctrine has no application to this matter. First, Plaintiff was not a "state-court loser." Indeed, he prevailed in the state court proceedings. He succeeded in having his name placed on the ballot and was elected to the position sought. Additionally, Plaintiff neither complains of the state-court judgment nor does he invite review or rejection of that judgment. Under these circumstances it cannot be said that the *Rooker–Feldman* doctrine bars this action. Since *Rooker–Feldman* does nothing to deprive this court of subject matter jurisdiction, the court turns to consider the application of state-law principles of preclusion.

### III. *Issue Preclusion*

As recognized by the Court in *Exxon*, ordinary principles of preclusion may bar a federal action even in cases where *Rooker–Feldman* has no application. *Exxon*, 125 S.Ct. at 1527. Thus, once a state action is concluded, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires that the federal court give that judgment the same preclusive effect it would otherwise be afforded in the state court. Application of such preclusion does not require dismissal of federal litigation for lack of subject matter jurisdiction, but may dictate the eventual outcome of that action. *Id.* (where *Rooker–Feldman* does not apply, jurisdiction exists and "state law determines whether the defendant prevails under principles of preclusion").

■ The doctrines of res judicata and collateral estoppel apply to civil rights lawsuits brought pursuant to 42 U.S.C. § 1983. *Allen v. McCurry*, 449 U.S. 90, 103–04, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Gill v. Stella*, 845 F.Supp. 94, 100 (E.D.N.Y.1994). As noted, this court must give the same preclusive effect to a state court judgment as would be given under the law of the state in which the judgment was rendered. *Migra v. Warren City School Dist.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir.2002); *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir.1996). Accordingly, the court must consider the law of the State of New York when determining the preclusive effect of the prior proceeding. Here, Defendants claim only that Plaintiff's lawsuit is barred by issue preclusion.[2]

■ Under New York law, collateral estoppel, also known as issue preclusion, will bar re-litigation of an issue if the issue sought to be precluded is identical to the issue in the first proceeding and is one which has necessarily been decided in the earlier proceeding in the context of a full and fair opportunity to litigate. *Hoblock*, 422 F.3d at 94; *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995); *see Capital Telephone Co. v. Pattersonville Telephone Co.*, 56 N.Y.2d 11, 17–18, 451 N.Y.S.2d 11, 436 N.E.2d 461 (1982); *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969). The party seeking preclusion bears the burden of showing the identity of issues while the party against whom collateral estoppel is asserted bears the burden of showing the absence of a full and fair opportunity to

---

**2.** Presumably, Defendants do not claim the bar of res judicata (claim preclusion) because they concede that the state court proceedings could not have afforded Plaintiff the same measure of relief that he seeks here. *See Stubbs v. de Simone*, 2005 WL 2429913 *13 (S.D.N.Y.2005)(state court entertaining Article 78 proceeding "does not have the power to award the full measure of relief available in subsequent section 1983 litigation"), quoting, *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir.2004).

litigate. *Colon,* 58 F.3d at 869; *Capital Tel.,* 56 N.Y.2d at 18, 451 N.Y.S.2d 11, 436 N.E.2d 461.

■ Issue preclusion analysis thus requires this court to determine, as a threshold matter, whether the matter sought to be litigated in this federal forum was "actually and necessarily decided" in the prior state action. *Hoblock,* 422 F.3d at 94. With respect to Plaintiff's state law claim—Count 4 of the complaint—there is no question that the issue raised here is identical to that raised in the state court proceedings. Indeed, the language used in Plaintiff's order to show cause in support of the state court proceedings parrots the alleged state court violations set forth in this complaint. Both allege violations of the New York State Election Law. Because the propriety of Defendants' actions under state law is the identical issue raised in the state court and there was a full and fair opportunity to litigate that matter, it must be dismissed as barred by the doctrine of collateral estoppel.

■ As to the federal complaint raised here, a different analysis is required. According to Defendants, the issue necessarily decided in the course of the state court proceedings was the overall propriety of their actions. Since this issue is alleged to have been decided in Defendants' favor, it is argued that the present civil rights lawsuit is barred. The issue as framed by Plaintiff here, however, is narrower. Plaintiff frames his federal issue as whether or not Defendants' initial decision to invalidate his petition was made in violation of his constitutional rights. The state courts considered only whether or not Plaintiff's nominating petition conformed to the requirements of the Election Law of the State of New York. There was neither an allegation nor any holding as to the violation of any constitutional right. As was the case in *Hoblock,* there is no indication that the state court ever considered the constitutional issues raised in the context of Plaintiff's federal claim. *See Hoblock,* 422 F.3d at 94. Since the federal constitutional issues were neither raised nor decided in the context of the state court proceedings, they were not "actually and necessarily decided" in the prior state action and issue preclusion does not bar Plaintiff's federal claims.

Having determined that Plaintiff's federal claims are barred by neither the *Rooker–Feldman* doctrine nor issue preclusion, the court turns to consider the sufficiency of the pleading of those claims.

## IV. *The Pleading of the Civil Rights Claims*

To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), plaintiff must show a deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993); *Millar v. Ojima,* 354 F.Supp.2d 220, 226 (E.D.N.Y.2005). Plaintiff claims the deprivation of his constitutional rights to due process and equal protection as well as the conspiracy to violate these rights. The factual underpinning of each claim is the same, *i.e.,* that Defendants treated Plaintiff differently from other Republican candidates. It is further alleged that in making this unlawful distinction, Defendants' "acted with actual malice ... and with willful and wanton indifference to and deliberate disregard for plaintiff's statutory and constitutional rights" and that Defendants "acted intentionally, and in knowing disregard for the law, in voting for, and causing, the invalidation of the [Plaintiff's] petitions, which, in all aspects, were proper and valid." Defendants question the sufficiency of these factual pleadings with respect to each claim.

### A. Due Process: Count 1

#### 1. Procedural Due Process

■ Plaintiff's claims of Defendants' wanton and wilful acts can only be described as complaining of random and unauthorized acts and not pursuant to some established state procedure. In such cases, procedural due process is not violated "so long as the State provides a meaningful postdeprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted). The postdeprivation remedy here is clear and, indeed, was utilized by Plaintiff. That is, the commencement of a proceeding, pursuant to the New York State Election Law, to reverse the decision of the BOE. Because Plaintiff was free to take advantage of this remedy, he cannot claim a violation of his procedural right to due process of law. Accordingly, any such claim is dismissed. *See Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir.1996)("due process clause 'offer[s] no guarantee against errors in the administration of an election,' at least where state law provides a fair and adequate method for correcting such errors"), quoting, *Powell v. Power*, 436 F.2d 84, 88 (2d Cir.1970).

#### 2. Substantive Due Process

■ To the extent that Plaintiff's complaint can be construed as setting forth a claim for a denial of substantive due process, any such claim also fails. "Substantive due process protects against government action that is arbitrary, conscience-shocking or oppressive in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995). A claim for a violation of substantive due process must allege that defendants engaged in gross abuse which exists "only where the government action challenged is so 'outrageous' and 'arbitrary' that it 'shocks the conscience.'" *Dibbs. v. Roldan*, 356 F.Supp.2d 340, 353 (S.D.N.Y.2005); *see Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir.1999). No construction of the facts in this matter can support such a claim. Even if the decision to deny plaintiff's original petition was wrong, it was a decision that Defendants, in their capacity as the BOE were empowered to make based upon the filing of objections. Nothing in the proceedings surrounding the factual background of this litigation shocks the conscience of the court so as to support a substantive due process claim. Any such claim is therefore dismissed.

### B. Equal Protection: Count 3

The Fourteenth Amendment right to equal protection of the law is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Disabled American Veterans v. United States Dep't. of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir.1992).

■ To establish an equal protection violation, plaintiff must show: (1) that he was treated differently from other similarly situated individuals and (2) that this treatment was based upon an impermissible consideration such as race, religion or "an intent to inhibit or punish the exercise of" a constitutional right. *Stubbs*, 2005 WL 2429913 * 16, quoting, *Harlen Assoc. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir.2001). Plaintiff may also claim selective treatment from others similarly situated based upon either a malicious intent to injure or treatment that was irrational and lacking completely in any rational basis. *E.g., Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir.2005); *see also Village of Willowbrook v. Olech*, 528

U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

Plaintiff attempts to satisfy the first component of an equal protection claim by alleging differential treatment from other Republican candidates. As to the second prong of his claim, Plaintiff alleges an intent to inhibit his constitutional right of access to the ballot. Plaintiff also alleges, in the most general of terms, that Defendants acted with wilful and wanton indifference and deliberate disregard for his constitutional rights.

■■■ Plaintiff correctly asserts that there exists a constitutional right of access to the ballot. *See Strong v. Suffolk County Bd. of Elections,* 872 F.Supp. 1160, 1164 (E.D.N.Y.1994); *Williams v. Sclafani,* 444 F.Supp. 906, 911 (S.D.N.Y.1978). A valid equal protection claim denying such a right, however, must allege "intentional or purposeful discrimination." *Diaz v. New York City Bd. of Elections,* 335 F.Supp.2d 364, 367–68 (E.D.N.Y.2004), quoting *Dill v. Lake Pleasant Central Sch. Dist.,* 205 F.Supp.2d 24, 33 (N.D.N.Y.2002), quoting, *Gold v. Feinberg,* 101 F.3d 796, 800 (2d Cir.1996); *Strong,* 872 F.Supp. at 1164. To prevail, Plaintiff will be required to show that defendants acted with intentional discrimination and allegations of "erroneous or arbitrary administration of state election laws" are insufficient. *Diaz,* 335 F.Supp.2d at 367–68; *see also Gelb v. Bd. of Elections of the City of New York,* 224 F.3d 149, 154 (2d Cir.2000) (referring to "thirty year doctrine" in Circuit that civil rights action is not available to remedy election process errors in the absence of a showing of "intentional or purposeful discrimination"), quoting *Powell,* 436 F.2d at 88. Similarly, an equal protection claim based upon the allegation of either a malicious intent to injure or irrational treatment requires Plaintiff to prove more than the fact that the decision to reject his nominating petition was wrong—he must prove that the decision was motivated by malicious bad faith or intent to injure. *Bizzarro,* 394 F.3d at 86.

Plaintiff's complaint alleges intentional discrimination in only the most general of terms. In light, however, of the liberal pleading allowed under the Federal Rules and the mandate that all factual allegations be accepted as true, the court is constrained to hold, at this stage of the proceedings, that the equal protection claim is sufficient to survive.

## C. *Conspiracy: Count 2*

■■■ Liability for conspiracy to violate the civil rights laws is established by 42 U.S.C. § 1985 ("Section 1985"). Section 1985 applies to conspiracies of private individuals as well as state actors. *See Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir. 1988). The statute creates no substantive rights but, instead, provides a remedy for the deprivation of rights guaranteed by the United States Constitution. *Great Am. Fed. Sav. & Loan v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Traggis,* 851 F.2d at 586–87.

■■■ A claim of conspiracy must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir.2003); *see Sylla v. City of New York,* 2005 WL 3336460 *7 (E.D.N.Y.2005). The Second Circuit has held clearly that a complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss. *Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir.1999); *see, e.g., Sylla,* 2005 WL 3336460 *7 (dismissing conspiracy claim for failure to allege a meeting of minds among defendants); *Pinero v. Long Island*

*State Veterans Home,* 375 F.Supp.2d 162, 169 (E.D.N.Y.2005) (same).

■ Plaintiff's claim of conspiracy fails utterly to allege any agreement, express or otherwise, between Defendants to deprive Plaintiff of his right of access to the ballot. The complaint alleges conspiracy only in the most conclusory fashion stating that Defendants acted "in concert with one another and in concert with others." This allegation provides no basis to support a finding of a meeting of Defendants' minds to achieve an unlawful end. Indeed, the fact that Defendants are from different political parties is a fact that would tend to militate against such a finding. In short, Plaintiff fails to allege any facts in support of his claim of a Section 1985 conspiracy by Defendants. Accordingly, this claim must be dismissed.

## CONCLUSION

Defendants' motion to dismiss Counts One, Two and Four of Plaintiff's complaint is granted. Accordingly, the court dismisses with prejudice Plaintiff's federal due process and conspiracy claims as well as his state law claims. The motion to dismiss Count Three of Plaintiff's complaint, the equal protection claim, is denied.

The Clerk of the Court is directed to terminate the motion to dismiss.

SO ORDERED.