Robert VARGAS, Plaintiff–Appellant,

v.

**THE CITY OF NEW YORK and The New York City Police Department, Defendants–Appellees,**

No. 03–7311.

United States Court of Appeals, Second Circuit.

Argued: March 31, 2004.

Decided: July 27, 2004.

---

Lee Nuwesra, New York, NY, for Plaintiff–Appellant.

Mordecai Newman, Assistant Corporation Counsel of the City of New York (for Michael A. Cardozo, Corporation Counsel) (Larry A. Sonnenshein, Assistant Corporation Counsel, on the brief), New York, NY, for Defendant–Appellee.

Before: JACOBS, B.D. PARKER, Circuit Judges, BLOCK, District Judge.[1]

B.D. PARKER, JR., Circuit Judge.

Robert Vargas appeals from a judgment of the United States District Court for the Southern District of New York (Preska, *J.*) dismissing, under Federal Rule of Civil Procedure 12(c), his complaint under 42 U.S.C. § 1983 against the City of New York alleging violations of equal protection and due process arising from his termination by the New York City Police Department. Vargas and his partner were tried on departmental charges of using excessive force in effectuating an arrest. After the charges were sustained and Vargas was dismissed from the NYPD, he sought review in state court pursuant to Article 78. *See* N.Y. C.P.L.R. § 7801 *et*

---

1. The Honorable Frederic R. Block, of the United States District Court for the Eastern District of New York, sitting by designation.

*seq.* The state court concluded that substantial evidence supported the charges. *Vargas v. Safir*, 278 A.D.2d 54, 717 N.Y.S.2d 562 (N.Y.App.Div.2000) (*Vargas I*).

██ Vargas, a black officer of hispanic descent, then sued in District Court alleging that his dismissal violated equal protection and due process. His theory was that his discipline was racially tainted since white officers convicted of similar offenses typically received less serious sanctions. The Court dismissed the complaint on the ground that it lacked jurisdiction under the *Rooker–Feldman* doctrine, which provides that inferior federal courts have no subject matter jurisdiction over cases that effectively seek review of state court judgments. The Court concluded that the relief Vargas sought would, if granted, effectively overrule the results of the Article 78 proceeding. Because we conclude that the *Rooker–Feldman* doctrine does not prevent the exercise of federal jurisdiction over Vargas's equal protection claim, we vacate the District Court's dismissal of Vargas's complaint and remand for further proceedings. However, we affirm the Court's dismissal of his due process claim.

## I. Background

On August 4, 1995, Vargas and his partner responded to a complaint that an elderly woman had been threatened by a man with a gun. A suspect, Glen Givens, was located and arrested after a brief altercation. Givens sustained a serious injury to his left eye and filed a complaint alleging the use of excessive force with the Civilian Complaint Review Board against Vargas and his partner, as well as two

other officers who responded to the call. In 1998, almost three years later, Vargas was charged by the Department with using excessive force,[2] and a disciplinary hearing was held before the Office of Administrative Trial Hearings (OATH) (A 7). Testimony was taken from all four officers who responded to the call, as well as Givens and Francisco Flores, who was with Givens at the time of the arrest. Although Vargas and his partner denied assaulting Givens, both Givens and Flores testified that, among the four officers, Vargas and his partner were principally involved in the altercation (A 40–44), and the other two officers merely observed to insure that bystanders did not intervene. (A 43) The Administrative Law Judge found that Vargas and his partner punched and kicked Givens in a manner that was "clearly unnecessary and gratuitous," (A 53) and that they "compounded their misconduct by denying in sworn testimony that they kicked or punched Mr. Givens while he was on the ground." (A 56) *Police Dep't v. Vargas*, Index Nos. 787–88/98, slip op. at 16, 19 (OATH July 16, 1998). Citing a recent OATH decision in which an excessive force determination resulted in the termination of the officer, the ALJ recommended that both Vargas and his partner be dismissed from the NYPD (A 57), despite the recommendation of an NYPD internal prosecutor that Vargas should merely be suspended for thirty days and placed on probation for one year. Upon receiving the ALJ's report and recommendation, the Police Commissioner terminated Vargas (A 67).[3]

Vargas challenged his termination in an Article 78 proceeding in New York State Supreme Court, claiming that the ALJ's

---

**2.** Although Givens named all four officers in his complaint, the NYPD had charged only Vargas and his partner with using excessive force.

**3.** The record does not reveal whether the Commissioner also terminated Vargas's partner.

determination that he used excessive force was not supported by substantial evidence. The petition was transferred to the Appellate Division, *see* N.Y. C.P.L.R. § 7804(g), which dismissed it. *Vargas I*, 717 N.Y.S.2d at 563 (A 68). The Appellate Division held that the determination was supported by substantial evidence, that no basis existed to disturb the ALJ's credibility findings, and that the "penalty of dismissal [did] not shock [the] conscience in view of the evidence that the complainant had been repeatedly kicked and punched while restrained and lying on the ground, sustaining severe injury to his left eye that required surgery and may leave him permanently visually impaired." *Id.* (A 68)

## II. The District Court's Decision

Vargas then sued in district court alleging that his termination violated his equal protection rights under the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, he alleged that, apart from whether substantial evidence supported the ALJ's factual determination, his punishment was racially discriminatory because it was the policy and practice of the NYPD to "selectively prosecut[e] Hispanic and other Minority police officers more often and more severely than their White counter-parts." Compl. ¶ 1. (JA 4)

The City moved to dismiss the complaint under Rule 12(c), arguing that collateral estoppel and the *Rooker–Feldman* doctrine barred Vargas's claims. The District Court granted the motion, holding that collateral estoppel applied because Vargas was seeking to relitigate the propriety of his termination, which had been fully and fairly litigated in the Article 78 proceeding. *Vargas v. City of New York*, No. 01 Civ. 7093(LAP), 2003 U.S. Dist. LEXIS 2850, at *12–*16 (S.D.N.Y. Feb. 27, 2003) (*Vargas II*). The Court rejected Vargas's contention that, because he only learned of the alleged discriminatory policy after the Article 78 proceedings concluded, he did not have an opportunity to litigate his racial discrimination claim in state court. It concluded that Vargas could have raised the issue and that, in any event, the state proceedings resolved the issue against him. The court, in dismissing his petition, reasoned that the state court necessarily concluded that his dismissal was supported by substantial evidence and was not arbitrary or an abuse of discretion. *Id.*

The District Court also concluded that it lacked subject matter jurisdiction because the crux of Vargas's federal court challenge—that he was terminated on account of his race—was " 'inextricably intertwined' " with his state court claim and therefore barred by the *Rooker–Feldman* doctrine. *Id.* at *19; *see Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 29 (2d Cir.2003) ("[F]ederal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court."). It also concluded that Vargas's general challenge to NYPD's policy and practice of treating minority officers differently than white officers merely restated his claim that he was improperly terminated and, as such, was also barred by *Rooker–Feldman*. *Vargas II*, 2003 U.S. Dist. LEXIS 2850, at *19; *see Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 200 (2d Cir. 1996) (agreeing that the *Rooker–Feldman* doctrine "permits federal courts to entertain … general claims" attacking the "standards governing state agency disciplinary action," but looking to the relief requested by the plaintiff to determine whether a federal ruling would require the conclusion that the state court decision was wrong, thus running afoul of *Rooker–Feldman* ).

Finally, the Court dismissed Vargas's due process claim, in which he contended that the Department violated its regulations and prejudiced his defense by waiting almost three years to initiate disciplinary proceedings. The Court concluded that "an Article 78 ... proceeding provides sufficient constitutional due process safeguards to a government employee challenging an administrative action taken against him by his employer." *Vargas II*, 2003 U.S. Dist. LEXIS 2850, at *20 (citing, *inter alia*, *Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir.1998)). Vargas appeals.

## III. Discussion

### A. Standard of Review

■ We review *de novo* the District Court's judgment on the pleadings, as well as its determination that it lacks subject matter jurisdiction. *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir.2003); *Rivers v. McLeod*, 252 F.3d 99, 101 (2d Cir.2001).

### B. Vargas's Equal Protection Claims.

■ Under the *Rooker–Feldman* doctrine, inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are "inextricably intertwined" with earlier state court determinations.[4] While we have noted that the Supreme Court "has provided little guidance in determining when claims are 'inextricably intertwined' with a prior state court judgment," we have held that " 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subsequent litigation will be barred under the

*Rooker–Feldman* doctrine if it would be barred under principles of preclusion." *Phifer v. City of New York*, 289 F.3d 49, 55–56 (2d Cir.2002) (quoting *Moccio*, 95 F.3d at 199–200); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring) ("The federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."). The doctrine is generally applied coextensively with principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion). If a suit or claim would be barred in state court by either, *Rooker–Feldman* prevents the federal court from asserting subject matter jurisdiction. *Moccio*, 95 F.3d at 199–200. However, where, as here, a section 1983 action is brought by an unsuccessful Article 78 plaintiff, only issue preclusion triggers the *Rooker–Feldman* bar. New York's claim preclusion rule does not apply because a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation. *Davidson v. Capuano*, 792 F.2d 275, 278–79 (2d Cir.1986) (citing, *inter alia*, *Schwab v. Bowen*, 41 N.Y.2d 907, 908, 394 N.Y.S.2d 616, 363 N.E.2d 341 (1977)); *see also Colon v. Coughlin*, 58 F.3d 865, 870 n. 3 (2d Cir.1995). Thus, to determine whether *Rooker–Feldman* bars Vargas's section 1983 claims, we consider whether they are subject to issue preclusion under New York's collateral estoppel rules.

■ Under New York law, issue preclusion occurs if "(1) the issue in question was actually and necessarily decided in a

4. The *Rooker–Feldman* doctrine takes its name from two Supreme Court cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of*

*Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon*, 58 F.3d at 869 (footnote omitted) (citing, *inter alia, Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985)). Accordingly, we must first determine whether the "issue" in Vargas's federal suit, which alleges individual and department-wide racial discrimination in "selectively prosecuting Hispanic and other Minority police officers more often and more severely than their White counter-parts," Compl. ¶ 1, was actually and necessarily decided by the state court when it concluded that substantial evidence supported the determination that Vargas used excessive force and that the penalty of dismissal did not shock the conscience. The District Court concluded that it was, holding that in both suits Vargas sought to litigate the propriety of his termination and that "the Appellate Division's finding that the termination decision was not arbitrary and capricious but was based on substantial evidence necessarily subsumes the question of whether it was made with discriminatory intent." *Vargas II*, 2003 U.S. Dist. LEXIS 2850, at *12, *19. We disagree.[5]

While it is true that the Article 78 court passed upon the propriety of Vargas's termination, this acknowledgment does not demonstrate that the court "actually and necessarily" decided an issue that was never presented to it, even if that issue touched, in a general sense, on the propriety of the termination. For example, in *Phifer*, 289 F.3d at 58, we held that a mother's federal claim of racial discrimination with regard to a decision to remove a child from her custody could proceed even where she had unsuccessfully asserted racial discrimination on the part of City officials to the state Family Court. Although the Family Court had held that the child "was removed … from her mother in a lawful manner," its determination dealt only with allegations of racism insofar as they concerned the defendants actually involved in Family Court proceedings as opposed to those previously involved in the initial decision to remove the child. *Id.* at 54. We held that "[b]ecause the family court did not … 'actually and necessarily decide[ ]' the issue of whether the decision to remove [the child] was motivated by racism, *Rooker-Feldman* would not bar this claim." *Id.* at 58.

The mere failure to raise an issue in state court does not, however, invariably save a federal plaintiff from issue preclusion under *Rooker-Feldman*. This principle is illustrated by our earlier decision in *Moccio*, 95 F.3d at 201, where we held that even though the plaintiff's equal protection claim was never presented in state court, it was barred by *Rooker-Feldman* because the district court would have been forced to reconsider "the precise issue" on which the state court's decision rested—namely, whether a rational relationship existed between Moccio's punishment and his misconduct. Since Moccio did not allege that he was treated differently on the basis of a suspect classification, or his exercise of a fundamental right, the disparate treatment of which he complained needed only a rational basis in law to be upheld. *See Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (rational basis review for disparate treatment not on the basis of a suspect classification). We reasoned that this was precisely what the

---

**5.** Since we hold that Vargas's discrimination claim was not actually and necessarily decided by the state court, we need not reach the question whether Vargas had a full and fair opportunity to litigate the issue there.

state court held when it found Moccio's punishment to be "not so disproportionate to [his] offenses as to ... shock[ ] ... one's sense of fairness." *Moccio*, 95 F.3d at 201 (internal quotation marks omitted). Thus, to permit his equal protection claim would have "require[d] the district court to decide an issue that was previously decided adversely to Moccio." *Id.*

▮ The differences between Moccio and Vargas are significant since Vargas raises an equal protection claim based on a suspect classification for the first time in federal court. In *DiBlasio v. Novello*, 344 F.3d 292, 296 (2d Cir.2003), for example, we held that *Rooker–Feldman* did not bar DeBlasio's federal action because the only issue that had been decided in his Article 78 proceeding was whether, under the standards applicable to preliminary injunctions, he demonstrated that the summary suspension of his medical license was arbitrary and capricious. We concluded that deciding DiBlasio's due process claims in his favor in his later federal action would not necessarily contradict the Article 78 court's determination that his suspension was not arbitrary. The lower court cases that have interpreted *Moccio* to bar such claims—including *Hernandez v. City of New York*, No. 98 Civ. 7237(SAS), 2000 U.S. Dist. LEXIS 1256 (S.D.N.Y. Feb. 1, 2000), on which the District Court below

relied in concluding that "the state court necessarily decided ... that the ... [termination] decision was not the product of disparate treatment" where it held that the decision had a rational basis and was neither arbitrary nor capricious, *Vargas II*, 2003 U.S. Dist. LEXIS 2850, at *15,- *19—are therefore incorrect.[6]

A correct application of *Moccio* is illustrated by *Latino Officers Ass'n v. City of New York*, 253 F.Supp.2d 771 (S.D.N.Y. 2003), involving circumstances quite similar to those presented by this appeal. In *Latino Officers*, the district court considered the equal protection and First Amendment retaliation claims of three minority NYPD officers who, like Vargas, were dismissed for various infractions and brought unsuccessful Article 78 petitions challenging their dismissals. The first plaintiff neither raised nor had the Article 78 court decide whether his termination was discriminatory or retaliatory, so the court, distinguishing *Moccio*, held that his federal suit was not barred by *Rooker–Feldman*:

> A finding that the decision to terminate was supported by substantial evidence— essentially a finding that it was rational—does not lead inexorably to the conclusion that race was not a motivating factor in the NYPD's decision to termi-

---

**6.** The source of the error in *Hernandez* appears to be a misreading of our decision in *Moccio*. In dismissing Hernandez's federal *equal protection* claim under the *Rooker–Feldman* doctrine, the court quoted language from *Moccio* that we had used to hold Moccio's *due process* claim barred by *Rooker–Feldman*. *See Hernandez*, 2000 U.S. Dist. LEXIS 1256, at *9 (citing and quoting *Moccio*, 95 F.3d at 201). However, as we noted above, our disposition of Moccio's equal protection claim depended in part on whether Moccio was a member of a protected class. Thus, it was not simply by virtue of the state court's finding that Moccio's termination was not arbitrary and capricious that the district court lacked jurisdiction

over his equal protection claims under *Rooker–Feldman*. Rather, it was because he did not allege that he was treated differently than others similarly situated to him along suspect lines. This confusion was reflected in the *Hernandez* court's later comment that the question whether a decision was "arbitrary and capricious" was "an issue which necessarily subsumes the question of whether such decision was made with discriminatory intent," *id.* at *10 n. 5—language that the District Court in the instant matter seized upon in dismissing Vargas's equal protection claims under *Rooker–Feldman*. *Vargas II*, 2003 U.S. Dist. LEXIS 2850, at *19.

nate him. Similarly, the court's determination that the penalty of termination did not 'shock the conscience' essentially means that there was some rational basis for the termination, but does not preclude the possibility that race was a factor in determining the penalty. It is possible that race motivated defendants' decisions to terminate [the plaintiff], even though defendants had another articulated basis for the termination that the Article 78 court found to be rational. *Id.* at 785 (footnotes omitted). The second plaintiff in *Latino Officers*, however, had contended in his Article 78 proceeding that his termination was retaliatory and discriminatory. The state court's conclusion that the penalty of dismissal did not shock the conscience, therefore, "necessarily implied rejection of [his] claim that his termination was discriminatory and retaliatory." *Id.* at 787. In such circumstances, "the federal claim [would] succeed[ ] only to the extent that the state court wrongly decided the issues before it," and is thus barred by *Rooker–Feldman*. *Pennzoil*, 481 U.S. at 25, 107 S.Ct. 1519 (Marshall, J., concurring).

In determining whether *Rooker–Feldman* applies, the distinction drawn in *Latino Officers* between the plaintiff who had raised his discrimination claim in state court and the one who did not is correct. Accordingly, we hold that the *Rooker–Feldman* doctrine would prevent the District Court from exercising subject matter jurisdiction over Vargas's equal protection claim only if Vargas had raised it in the state court proceedings. Since Vargas did not do so, his equal protection claim can proceed, and we vacate its dismissal by the District Court.[7]

---

7. Concerns that litigants who are governmental employees faced with administrative disciplinary proceedings will interfere with them by immediately commencing parallel federal actions under section 1983 are misplaced.

## C. *Vargas's Due Process Claim.*

■ Vargas's due process claim is another matter. He contends that his due process rights were violated because Appellees waited "for almost three (3) years" before prosecuting him for using excessive force, apparently in violation of NYPD "regulations and practice [that] require[ ] . . . disciplinary proceedings against Police officers [to] be conducted within eighteen (18) months, or the charges to be dropped." Compl. ¶¶ 53–54. (A 12) Moreover, he contends that the District Court erred in dismissing this claim because it was "starkly different" than the due process claim he raised in the Article 78 proceeding and therefore was "not subject to the Rooker–Feldman preclusive effect." Appellant's Rep. Br. at 7. (Gray 7) This may be, but the question is academic because the District Court did not find Vargas's due process claim barred by *Rooker–Feldman*. Instead, it held that he had not established that "the procedural safeguards established by the state [we]re insufficient to protect his rights." *Vargas II*, 2003 U.S. Dist. LEXIS 2850, at *20; *see Gudema*, 163 F.3d at 724 ("A deprivation of liberty or property through the conduct of a state employee whose acts are random and unauthorized, however, does not constitute a procedural due process violation so long as the state provides a meaningful remedy thereafter."). We have held that an Article 78 proceeding, in circumstances such as these, provides a meaningful remedy where violations of due process by a local governmental entity are alleged. *Gudema*, 163 F.3d at 724–25. Accordingly, we affirm the dismissal of Vargas's due process claim.

---

District courts have authority, where appropriate, to stay such actions pending the conclusion of administrative and Article 78 proceedings.

## IV. Conclusion

For the reasons set forth, we affirm the dismissal of Vargas's due process claim and vacate the dismissal of his equal protection claim. We remand for further proceedings consistent with this opinion.