Stephen DIBBS, Plaintiff pro se,

v.

Paul ROLDAN, Deputy Commissioner, New York State Division of Housing and Community Renewal John Mulholland, administrator, New York State Division of Housing and Community Renewal New York State Division of Housing and Community Renewal Dennis Ryan, Commissioner, New York State Division of Housing and Community Renewal Various unspecified Building Inspectors of New York City Department of Housing Preservation and Development Jerilyn Perine, Commissioner, New York City Department of Housing Preservation and Development Patricia Lancaster, Commissioner, New York City Department of Buildings Kenneth Podziba, Commissioner, New York City Board of Standards and Appeals Ten Be or Not Ten Be, Inc., (landlord), Tim Greenfield–Sanders (landlord), Law-

---

rence Pinner (landlord's architect), Joan Lobis, New York Supreme Court Judge, Carol Huff, New York Supreme Court Judge, Eileen Bransten, New York Supreme Court Judge, Defendants.

No. 03 Civ. 0913(JES).

United States District Court, S.D. New York.

Feb. 14, 2005.

## MEMORANDUM ORDER AND OPINION

SPRIZZO, District Judge.

Plaintiff *pro se* Stephen Dibbs ("plaintiff" or "Dibbs") brings the above-captioned action against employees of various New York City and New York State administrative agencies, the agencies themselves, three justices of the New York State Supreme Court, New York County, his landlord, and an architect in the employ of his landlord, pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961–68, seeking declaratory and injunctive relief in addition to damages and a mandamus. Defendants move to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. Pro. 12(b)(1) and (6), and plaintiff cross-moves for an order staying the federal court proceedings. For the reasons set forth below, the Court dismisses the Complaint against all moving defendants.[1]

Stephen Dibbs, New York City, pro se.

Eliot Spitzer, Attorney General of the State of New York, New York City, Constantine A. Speres, for Defendants Paul Roldan, John Mulholland, Dennis Ryan, Joan Lobis, Carol Huff, Eileen Bransten, and the New York State Division of Housing and Community Renewal, of counsel.

Michael A. Cardozo, Corporation Counsel of the City of New York, New York City, Louise Lippin, for Defendants Jerilyn Perine, Patricia Lancaster, Kenneth Podziba, and Various Unspecified Building Inspectors employed by the New York City Department of Housing Preservation and Development, of counsel.

Benjamin R. Kaplan, New York City, for Defendants Ten Be or Not Ten Be, Inc. and Tim Greenfield–Sanders.

Zetlin & De Chiara LLP, Westbury, NY, Scott K. Winikow, for Defendant Lawrence Pinner, of counsel.

## BACKGROUND

The following facts are taken from plaintiff's Complaint or documents referenced therein. Liberally interpreted, plaintiff's Complaint describes a tortured landlord-tenant dispute, which has resulted in multiple prior litigations. The property at issue is located at 155 Avenue B in Manhattan. Complaint ("Compl.") ¶ 27. Dibbs is the rent stabilized tenant of "an unlegalized residential apartment" on the ground floor of the building ("the apartment"). Compl. ¶¶ 1, 26–27. He first rented the apartment in 1978. *Id.* ¶¶ 26. Defendants Ten Be or Not Ten Be, Inc. and Tim Greenfield–Sanders, president of Ten Be or Not Ten Be, Inc., (collectively "the land-

---

1. Landlord defendants Ten Be or Not Ten Be, Inc. and Tim Greenfield–Sanders have not moved to dismiss plaintiff's Complaint as of this time and the Complaint therefore is not dismissed against them.

lord" or "landlord defendants") became the landlord of the building in 1984. *See id.* ¶¶ 2, 29. Plaintiff alleges that, shortly thereafter, the landlord "engaged [in] a protracted course of harassment against me by withholding the legally required heat, water, ventilation, etc, and producing dangerous and illegal conditions that evicted me from portions of the apartment...." *Id.* ¶ 2; *see id.* ¶¶ 29–41.

In response, plaintiff began withholding his rent. *Id.* ¶ 38. Then, in March 1993, the New York City Department of Housing Preservation and Development ("HPD") issued a Notice of Violation ("notice") alerting the landlord that a security gate outside plaintiff's apartment violated governing building codes and had to be removed. *See id.* ¶¶ 3, 50, 58, 75, 153; *Dibbs v. Tornicasa*, No. 98 Civ. 2102, 1999 WL 156359, at *1 (S.D.N.Y. Mar. 23, 1999). This security gate completed the enclosure of an area measuring approximately sixty square feet in size, bordered on either side by the neighboring buildings, at the back by the front wall of Dibbs' apartment, and toward the sidewalk by a section of iron fence and by the gate. *See* Compl. ¶ 46. While plaintiff was away in Florida, the landlord removed the security gate without plaintiff's permission, enabling free access to the enclosure where Dibbs had stored some of his belongings. *See id.* ¶¶ 45–50; *Dibbs*, 1999 WL 156359, at *1.

Upon his return Dibbs discovered what had taken place and filed three complaints with the New York State Division of Housing and Community Renewal ("DHCR"), alleging harassment, reduced services, and lack of heat and hot water. *See* Compl. ¶¶ 51–53; *Dibbs v. Tornicasa*, No. 98 Civ. 2102, 1999 WL 1201709, at *1 (S.D.N.Y. Dec. 14, 1999). Four months after his complaints were filed an informal conference was held, including defendant Mulholland, DHCR administrator, the landlord and his wife, and a heating mechanic.

Compl. ¶¶ 54, 60. At the conference, which allegedly began before plaintiff arrived, the landlord explained that he removed the gate along with plaintiff's household belongings stored in the area because of the building code violation he had received. *Id.* ¶¶ 55, 58. Plaintiff claims that defendant Mulholland refused to allow him to speak, and that the conference was eventually moved into a back room where it continued without plaintiff. *Id.* ¶¶ 57, 60.

That same month defendant Mulholland issued an order directing the landlord to submit an architect's report explaining how to rebuild the gate without violating building codes. *Dibbs*, 1999 WL 1201709, at *2; *see* Compl. ¶ 64. The landlord hired architect defendant Pinner to furnish such a report. *Dibbs*, 1999 WL 156359, at *2. Pinner, however, "[i]nstead of . . . submitting a report on restoring security iron work . . . sent at least two letters to Mulholland, stating that he didn't think that iron work was permissible, and intimidated administrator Mulholland to change his order. . . ." Compl. ¶ 67. Dibbs was not made aware of these "ex parte" communications at the time. *Id.* ¶ 68. Allegedly in response to Pinner's communications, Mulholland "changed his mind" and, on February 9, 1994, decided that he "was only going to install window bars over the existing windows. . . ." *Id.* ¶¶ 73, 86.

Plaintiff next filed a Petition for Administrative Review ("PAR"). This PAR was sent back by the DHCR director because it was "an inappropriate means to object to Mr. Mulholland's determination." *Id.* ¶ 91.

On June 28, 1994, the DHCR dismissed Dibbs' complaints. *See id.* ¶ 96.

Not to be deterred, on December 20, 1994, Dibbs commenced an Article 78 proceeding seeking a declaration that the DHCR's failure to issue a finding of harassment constituted an abuse of discre-

tion. *See id.* ¶ 100; State Defs.' Notice of Mot., dated Aug. 22, 2003 ("Notice of Motion"), Exhibit ("Ex.") A, Feb. 14, 1995 Decision and Order of Justice Joan B. Lobis, ("Lobis Decision") at 1. The Court dismissed Dibbs' petition because, in the absence of a final order from the DHCR, there was no basis for it. *See* Lobis Decision at 2; Compl. ¶ 103. The Appellate Division affirmed, and the Court of Appeals denied Dibbs' further appeal. Compl. ¶¶ 106, 107.[2]

On March 23, 1998, Dibbs filed suit in this Court against defendants Ernest Tornicasa and R. Berry of the HPD, John Mulholland of the DHCR, landlord Tim Greenfield–Sanders, and architect Pinner. *Dibbs*, 1999 WL 156359, at *1–2. Dibbs' complaint contained three types of allegations: "Category 1: Defendant Sanders entered Plaintiff's residence without permission, caused damage, and refused to repair that damage; Category 2: Defendants Sanders, Pinner, Mulholland, Tornicasa, and Berry prevented the fair processing of Plaintiff's harassment complaint; Category 3: Defendant Mulholland and the DHCR have failed to take any final action on Plaintiff's harassment complaint." *Id.* at *3. In its March 23, 1999 decision this Court dismissed plaintiff's category two claims against all defendants, with the exception of defendant Sanders who at that time had failed to file a motion to dismiss, declaring them time-barred. *Id.* at *5.

Subsequently, in its December 14, 1999 decision, this Court dismissed the remainder of plaintiff's complaint. The Court

found that Dibbs' claims that landlord Sanders prevented the fair processing of his harassment complaint, broke into his apartment, took his personal belongings, demolished the security gate and boarded over the windows and inner door, were all time-barred. *See Dibbs*, 1999 WL 1201709, at *4. The Court additionally determined that Dibbs' claim that the landlord tried to evict him by interfering with all of his essential services including heat, water and electricity failed "for want of a sufficient allegation that Defendant Sanders' conduct constituted state action" as required by § 1983.[3] *See id.* at *5.

As for defendant Mulholland, Dibbs had alleged "that his due process rights … were violated by the DHCR's decision not to commence a formal hearing on his harassment complaint that would have resulted in a final order subject to judicial review." *See id.* at *6. The Court granted defendant's motion for summary judgment on this claim finding that the relevant New York law provisions did not confer on harassment complainants the right to a formal hearing on their complaints resulting in a final order subject to judicial review, and therefore "Defendant Mulholland's decision to close the inquiry into Plaintiff's harassment complaint without ordering a formal hearing thereon did not violate Plaintiff's due process rights." *Id.* at *7.

Just prior to this final dismissal, in an order dated June 2, 1999, the DHCR Rent Administrator granted the landlord permission to remove the gate, and ordered a

---

**2.** On April 1, 1996 Dibbs commenced a state court action, index number 105918/96, against the landlord and architect Pinner. *See Dibbs*, 1999 WL 156359, at *2. That action was dismissed without prejudice on the grounds that Dibbs failed to oppose defendants' motions to dismiss. *See* Notice of Motion, Ex. F, Nov. 19, 2002 Decision by Justice

Eileen Bransten ("Nov.2002 Bransten Decision"), at 5.

**3.** The Court alternatively found that, to the extent that Dibbs' third claim directed at the landlord was a state claim, it would decline to exercise supplemental jurisdiction over it given its dismissal of plaintiff's § 1983 claims. *See Dibbs*, 1999 WL 1201709, at *5.

compensatory rent reduction for Dibbs in the amount of $27 per month. *See* Compl., Ex. 1, Order of DHCR, dated Feb. 8, 2000, at 1. Both Dibbs and the landlord filed PARs of this decision. *See id.* On February 8, 2000, the DHCR ruled on the PARs writing that "the evidence in the record below including the letters from the harassment proceeding, does not support the contention that the installation of a new type of gate with a door would result in a HPD approval" and that the decision granting permission to remove the gate therefore was not in error. *See id.* at 3. The DHCR additionally ruled that the grant of a decrease in rent commensurate with the decrease in services was appropriate, but that the decrease granted was too large, and should only have been $12 per month. *See id.* at 4. In a subsequent order dated September 14, 2000, the DHCR affirmed a Rent Administrator's determination that an unrelated rent reduction could be discontinued because services had been fully restored. *See* Notice of Motion, Ex. F, Nov. 19, 2002 Decision by Justice Eileen Bransten ("Nov.2002 Bransten Decision"), at 4; Compl. ¶ 114.

Shortly before the DHCR's final order was released, Dibbs filed a second Article 78 proceeding alleging wrongful deprivation of his living space resulting from the removal of the security gate. Compl. ¶ 116. The petition was denied as to the landlord defendants because they "are non-governmental parties who are plainly not subject to Article 78 proceedings in this context." Notice of Motion, Ex. C, Apr. 6, 2000 Decision of Justice Carol E. Huff ("Huff Decision"), at 2. The petition was also denied as to Tornicasa and the HPD because claims based upon the same factual background had previously been dismissed as time-barred by this Court. *Id.* The petition was denied as to Mulholland and the DHCR because, to the extent such claims had not been previously dismissed by this Court, they were the subject of the pending PARs. *Id.* These PARs were not decided until February 8, 2000, after Dibbs' petition had been filed. *Id.* However, Justice Huff determined that, since Dibbs had filed a motion to amend his petition to include review of the February 8, 2000 DHCR determination within the sixty-day statute of limitations for an Article 78 proceeding, he should be given leave to file a new petition based on that determination. *Id.*

Dibbs appealed Justice Huff's decisions and, on March 5, 2002, the Appellate Division determined that the DHCR had not abused its discretion in closing Dibbs' harassment complaint. *Dibbs v. Mulholland,* 292 A.D.2d 164, 164–65, 738 N.Y.S.2d 203, 203 (1st Dep't 2002). The Appellate Division further stated that the issue of reduction of services and rent was not before it to consider, as Dibbs, despite having opportunity to do so, had failed to timely commence a proceeding properly challenging that determination.[4] *See id.* at 165, 738 N.Y.S.2d at 203.

Dibbs then commenced another Article 78 proceeding seeking damages and an order restoring him to private possession of the enclosure and annulling the determination to award him a rent decrease of $12 per month. Notice of Motion, Ex. E, Apr. 16, 2001 Decision of Justice Eileen Bransten ("Apr.2001 Bransten Decision") at 1–2. Justice Bransten concluded that Dibbs' claims relating to his harassment complaint had already been adjudicated, and that those relating to the DHCR's February 8, 2000 order authorizing removal of

---

4. Dibbs also apparently filed an action in this Court seeking review of the February 8, 2000 DHCR determination. That complaint was dismissed for lack of subject matter jurisdiction due to the availability of Article 78 review in the New York state courts. *See* Nov. 2002 Bransten Decision, at 6 n. 2.

the gate and granting a rent reduction were incomplete because Dibbs failed to include a copy of the order with his petition. *Id.* at 5; *see* Compl. ¶ 117. Justice Bransten dismissed the petition without prejudice to renewal, "so long as [Dibbs] confine[d] his claims to those surrounding the DHCR's February 8, 2000 order, and any subsequent DHCR orders which have not been the subject of other suits (such as the DHCR's September 14, 2000 DHCR order)." Apr.2001 Bransten Decision, at 6. The Appellate Division affirmed. Compl. ¶ 118.

Dibbs next re-filed his Article 78 proceeding, contesting the DHCR's approval of removal of the security gate and the corresponding rent reduction, the New York City Department of Buildings' ("DOB") December 6, 2001 issuance of a work permit to landlord that would allow for "reconfiguration" and "elimination of a portion of [plaintiff's] apartment," and his landlord's conduct. Compl. ¶ 127; *see id.* ¶¶ 118, 125–27; Nov.2002 Bransten Decision, at 7. Justice Bransten now dismissed all of Dibbs' claims. Nov.2002 Bransten Decision, at 13; *see* Compl. ¶ 119.

Justice Bransten found no indication that Dibbs was entitled to exclusive use of the area between his apartment and where the security gate had stood, or that there was any governmental taking of his property by removal of the illegal gate, and noted that, "to the extent that Dibbs benefited from the gate, his rent was reduced to compensate him for the loss of its use." Nov.2002 Bransten Decision, at 10–11. Justice Bransten concluded that "[n]othing before this Court suggests that DHCR's determination ... was arbitrary, capricious or irrational." *Id.* at 11. Justice Bransten further found that Dibbs had failed to establish that the DHCR's unrelated September 14, 2000 order, which eliminated a monthly rent reduction because of restoration of services, was an

arbitrary or capricious decision, and denied Dibbs' petition in its entirety on the merits against the DHCR defendants involved. *Id.* Dibbs' claim based on the DOB's issuance of a work permit was dismissed because Dibbs had failed to first appeal to the Board of Standards and Appeals ("BSA") and therefore had not exhausted his administrative remedies. *Id.* at 12. The claim against the landlord defendants was dismissed because, as nongovernmental parties, they were not subject to Article 78 proceedings in such a context. *Id.* at 13.

Dibbs appealed and, in an opinion dated April 13, 2004, the Appellate Division affirmed, holding that Justice Bransten properly denied Dibbs' petition for injunctive and declaratory relief as against the DHCR because the Appellate Division had already determined that the DHCR's decision to close Dibbs' harassment complaint was not an abuse of discretion, and because the proceeding challenging the DHCR's determination granting the landlord's application for service and rent reduction was time-barred, and that Justice Bransten properly declined to entertain Dibbs' claims against the DOB because he had failed to first exhaust his administrative remedies. *See Dibbs v. Mulholland,* 6 A.D.3d 232, 774 N.Y.S.2d 327 (1st Dep't 2004); Compl. ¶ 120.

Finally, Dibbs filed the current action on February 7, 2003, which includes the defendants involved in his previous suits as well as the aforementioned New York Supreme Court Justices and Kenneth Podziba, Commissioner of the BSA and the BSA itself, and which is based on the same protracted landlord-tenant dispute described herein.

## DISCUSSION

In considering a motion to dismiss, a Court must accept as true all factual allegations set forth in the complaint and draw

all reasonable inferences in favor of the plaintiff. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir.2004) (citing *Gryl v. Shire Pharms. Group PLC*, 298 F.3d 136, 140 (2d Cir. 2002)). At the motion to dismiss stage, the Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). A complaint may only be dismissed for failure to state a claim if it "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000). In deciding a motion to dismiss the Court may consider documents referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in plaintiff's possession or were known to the plaintiff at the time of bringing suit, or matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002).

The Court has the duty to "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)), while holding them "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam*). While the Court must construe *pro se* complaints liberally, particularly where plaintiff files a *pro se* complaint alleging civil rights violations, *see Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003), a *pro se* plaintiff is not

exempt from complying with the relevant rules of procedural and substantive law. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). "[C]ourts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.'" *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir.1994) (quoting *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir.1977) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 1357)). Furthermore, the Court may not exempt *pro se* plaintiffs from the doctrine of res judicata. *See, e.g., Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205–06 (2d Cir.2002).

Dibbs' current complaint asserts causes of action against seven defendants or groups of defendants: (1) Jerilyn Perine, Commissioner of the HPD, Ernest Tornicasa, Deputy Inspector of the HPD, in his official and individual capacity,[5] "Various unspecified Building Inspectors" of the HPD, and the HPD itself; (2) Lawrence Pinner, the landlord's architect; (3) Kenneth Podziba, Commissioner of the BSA, and the BSA itself; (4) Paul Roldan, John Mulholland, Dennis Ryan, Deputy Commissioner, Administrator, and Commissioner, respectively, of the DHCR, in their official and individual capacities, as well as the DHCR; (5) Patricia Lancaster, Commissioner of the DOB, and the DOB; (6) Justices Joan Lobis, Carol Huff, and Eileen Bransten of the New York Supreme Court, in their official and individual capacities, and (7) Tim Greenfield–Sanders and Ten Be or Not Ten Be, Inc., the landlord defendants.

Plaintiff's § 1983 claims against the HPD defendants are precluded by the doctrine of res judicata. "Res judicata assures the finality of judgments by precluding a party to a lawsuit from litigating a

---

**5.** Deputy Inspector Tornicasa is not listed in the caption of plaintiff's Complaint, but is mentioned as a defendant therein. *See* Compl. ¶ 17.

claim more than once." *El–Bey v. City of New York,* 151 F.Supp.2d 285, 294 (S.D.N.Y.2001) (quoting *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 345 (2d Cir.1995)). The doctrine takes effect when there exists an adjudication on the merits in a prior law suit; the prior lawsuit involved the party to be precluded or a party in privity with that party; and the claims sought to be precluded were raised, or might reasonably have been raised in a prior lawsuit. *Id.* at 294.

■ In his current Complaint, plaintiff claims that the HPD "sided with the land-lord and refused to respond to my re-. peated complaints" about the heat and plumbing conditions in his apartment, Compl. ¶¶ 40–43, evaded his complaints about lack of ventilation and garbage accumulation, *id.* ¶ 84, "issued the building code violation that removal of the gate was predicated on," *id.* ¶ 75, and that the HPD "does not provide a tenant with adequate pre-deprivation procedures." *Id.* ¶ 139. This Court has already ruled that plain-tiff's claims against the HPD, including § 1983 claims, based on the same factual predicate and similar allegations, were time-barred. *See Dibbs,* 1999 WL 156359, at *4–5. Dismissal based on statute of limitations grounds constitutes a dismissal on the merits. *See PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 896 (2d Cir. 1983). In fact, in an Article 78 proceeding in State Supreme Court based on these same facts, Justice Huff dismissed plain-tiff's similar claims against the HPD, citing this Court's prior decision as having res judicata effect. *See* Huff Decision, at 2. Because prior adjudication on the merits has occurred which involved plaintiff and the HPD, and in which the claims now sought to be precluded were raised or, to the extent any were not, should have been raised given that such claims arise from the very same series of transactions that formed the basis of the previous federal decision, *see Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir.2001), plaintiff's claims against the HPD defendants must be dismissed.[6]

---

6. Plaintiff's attempt to avoid this time-bar by including the conclusory allegation that the HPD "acted jointly" with the DHCR, Compl. ¶¶ 17, 147, in effect attempting to tie the HPD to the DHCR activity occurring in 2000 which is described *infra,* must be rejected as plaintiff sets forth no facts suggesting any such in-volvement by the HPD and plaintiff's allega-tions, therefore, "do not reasonably follow from his description of what happened." *First Nationwide Bank,* 27 F.3d at 772 (quot-ing *Kadar Corp. v. Milbury,* 549 F.2d 230, 233 (1st Cir.1977) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Proce-dure: Civil § 1357)). To the extent plaintiff utilizes this same strategy to revive claims against defendant Pinner, Compl. ¶¶ 8, 22, it is likewise rejected.

Further, to the extent plaintiff's Complaint asserts a RICO claim against the HPD, DHCR, and the state justices based on "the ex parte meeting of the judges and DHCR and HPD," *id.* ¶ 258, and the alleged back-dating of an order by Justice Huff, *id.* ¶ 234, such claim must be dismissed as plaintiff has utter-ly failed to allege facts demonstrating the statutory elements of a civil RICO claim, 18 U.S.C. § 1962; *see Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). At minimum, plaintiff has not alleged the existence of an "enter-prise" within the meaning of 18 U.S.C. § 1961(4), *see First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 173 (2d Cir.2004), nor does plaintiff set forth two or more predicate acts by the defendants that satisfy the definition of "racketeering activi-ty." 18 U.S.C. §§ 1961(1),(5).

Nor can plaintiff's Complaint be construed to sufficiently allege that defendants violated plaintiff's civil rights by means of a conspira-cy under 42 U.S.C. § 1985, Compl. ¶ 8, as "[a] complaint alleging a conspiracy to violate civil rights is held to heightened pleading standards," *Julian v. N.Y.C. Transit Auth.,* 857 F.Supp. 242, 252 (E.D.N.Y.1994), *aff'd,* 52 F.3d 312 (2d Cir.1995), and plaintiff here has completely failed to allege "specific facts sug-gesting that there was a mutual understand-ing among the conspirators to take actions directed toward an unconstitutional end," *id.* at 252 (quoting *Duvall v. Sharp,* 905 F.2d

The only actions Dibbs' Complaint mentions involving defendant architect Pinner were taken in 1993 and 1994 and involve the opinions expressed by Pinner in plaintiff's DHCR proceeding. *See* Compl. ¶¶ 22, 66–68, 78–80, 85, 195, 204. Such actions were the subject of a previous suit by Dibbs against Pinner in this Court, and were dismissed as barred by the applicable statute of limitations. *See Dibbs,* 1999 WL 156359, at *4–5. Accordingly, Dibbs' claims against Pinner are also barred by the doctrine of res judicata.

■ Plaintiff's Complaint must be dismissed against defendant Kenneth Podziba, Commissioner of the BSA, and the BSA itself because, even liberally interpreted, it fails to allege any possible cause of action against said defendants. The Complaint is completely silent as to any act or omission performed by the BSA regarding plaintiff. *See* Compl. ¶¶ 19, 94, 130, 133. The only relevant reference to the BSA, as previously mentioned, relates to the 2001 work permit issued by the DOB to the landlord. *See id.* ¶¶ 125–33. Plaintiff had thirty days to appeal the permit to the BSA and failed to do so. *Id.* ¶¶ 130, 133. Justice Bransten dismissed plaintiff's claims against the DOB in the case before her based on plaintiff's failure to so appeal. *See* Nov. 2002 Bransten Decision, at 12. As the Complaint suggests no involvement by the BSA in the events that form the basis of this lawsuit, it is dismissed as against the BSA defendants.

■ Plaintiff's § 1983 claims against the DHCR and defendants Roldan, Mulholland, and Ryan must also be dismissed. First, to the extent plaintiff's claims against the DHCR defendants are based on events occurring prior to February 8, 2000, they are time-barred. New York Civil Practice Law and Rules ("CPLR") section 214 provides that the statute of limitations applicable to § 1983 actions brought in federal court in New York is three years. CPLR § 214; *Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997). Section 1983 claims accrue when the plaintiff knows or should know of the injury that is the basis of the action. *Ormiston,* 117 F.3d at 71. Plaintiff commenced the current action on February 7, 2003 and, thus, any alleged injury occurring prior to February 8, 2000 is barred by the statute of limitations. Though the vast majority of plaintiff's Complaint concerns acts occurring in 1993 and 1994, plaintiff himself acknowledges the February 8, 2000 time-bar. *See* Compl. ¶ 260.

To the extent, then, that plaintiff's claims against the DHCR defendants are based on the DHCR's February 8, 2000 and September 14, 2000 orders, the only allegations involving DHCR not time-barred, it must nonetheless be dismissed because plaintiff is essentially asking this Court to collaterally review the judgments of the New York State courts, specifically the most recent decision of Justice Bransten. This Court lacks the subject matter jurisdiction to do so.[7]

1188, 1189 (8th Cir.1990) (per curiam)). Such allegation appears to be no more than an attempt to boot strap those defendants against whom the statute of limitations has expired to the more recent activity of the DHCR and DOB defendants. *See* discussion *infra.*

7. Plaintiff's § 1983 claims against the DHCR, as well as against defendants Roldan, Mulhol-

land, and Ryan to the extent they are being sued in their official capacities for retrospective relief, must additionally be dismissed because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

It is well established that a federal district court is one of original, not appellate, jurisdiction and therefore has no subject matter jurisdiction to review state court decisions. *See Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *see also Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002); *Moccio v. N.Y.S. Office of Court Admin.,* 95 F.3d 195, 198–99 (2d Cir.1996). Additionally, the Rooker–Feldman doctrine bars not only claims which would involve direct review of a state court decision, but also claims which are "inextricably intertwined" with a state court decision or which seek relief that, if granted, would modify a state court decision. *See Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. 1303. The Second Circuit has explained that "'inextricably intertwined' means, at minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Phifer v. City of New York,* 289 F.3d 49, 56 (2d Cir.2002) (quoting

*Moccio,* 95 F.3d at 199–200). The Rooker–Feldman doctrine "is generally applied coextensively with principles of res judicata ... and collateral estoppel ... If a suit or claim would be barred in state court by either, *Rooker–Feldman* prevents the federal court from asserting subject matter jurisdiction." *Vargas v. City of New York,* 377 F.3d 200, 205 (2d Cir.2004).

Where a § 1983 action is brought by an unsuccessful Article 78 plaintiff, such as Dibbs, only collateral estoppel will trigger the Rooker–Feldman bar; New York's res judicata rule "does not apply because a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation." *Id.* Under New York law, collateral estoppel occurs if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995).

Liberally construing plaintiff's Complaint as the Court must, the only possible surviving basis for a § 1983 claim against the DHCR defendants is whether the DHCR's determinations in the February 8, 2000 and September 14, 2000 orders constitute an unconstitutional taking.[8] *See*

---

8. Any due process claim Dibbs attempts to make under the Fourteenth Amendment against the DHCR is time-barred as such claim stems from events occurring in the 1993–94 time period, *see* Compl. ¶¶ 147, 254 (DHCR unreasonably delayed in issuing a final order), *id.* ¶¶ 144, 148 (DHCR failed to provide Dibbs a hearing prior to or after the removal of the security gate), *id.* ¶¶ 51–96 (complaining generally about DHCR's handling of plaintiff's harassment complaint), and cannot be resurrected via the issuance of the February 8, 2000 order. In any event, this Court has already determined that DHCR did not violate plaintiff's due process rights based on similar allegations. *See Dibbs,* 1999 WL 1201709, at *6–7.

Dibbs' equal protection claim against the DHCR is based on the vague allegations that the "DHCR took away all my rights" after he filed his harassment complaint in 1993, *id.* ¶¶ 201–02, on DHCR Administrator Mulholland's duty to "maintain my premises in full and habitable use", *id.* ¶ 199, and subsequent refusal to do, *see id.* ¶ 252, and the DHCR's "inaction" and failure "to hold hearings", *id.* ¶ 253, all of which originate from the DHCR's handling of Dibbs' harassment complaint in the 1993–94 time period; thus, such claim is likewise time-barred.

Additionally, plaintiff's claim that the DHCR violated his personal security under the Fourth Amendment is based on its alleged failure to restore his apartment and remedy

Compl. ¶¶ 113–15, 240–41. The DHCR's February 8, 2000 order determined that there was no evidence that a new type of gate would have been approved by the HPD, that the Rent Administrator did not err in granting the ·decrease in service with a corresponding decrease in rent because of the HPD violation determining that the security gate was illegal, and that the Rent Administrator gave too large of a rent reduction. *See* Compl., Ex. 1, Order of DHCR, dated Feb. 8, 2000. The September 14, 2000 order affirmed a Rent Administrator's determination that an unrelated rent reduction could be discontinued because services had been fully restored. *See* Nov. 2002 Bransten Decision, at 4; *see* Compl. ¶ 114.

In his Article 78 proceeding before Justice Bransten, · Dibbs had a full and fair opportunity to litigate this takings question, and in fact did so; Dibbs argued that the removal of the security gate caused him to be partially evicted, that the rent reduction was not an adequate remedy for the loss of part of his apartment, and that the rent-reduction order was an unconstitutional regulatory taking of his property. *See* Nov. 2002 Bransten Decision, at 7–8.

Justice Bransten actually and necessarily decided the question against Dibbs when she concluded that Dibbs had not shown there was any governmental taking of his property, and that, to the extent Dibbs benefited from the gate, his rent was correspondingly reduced as compensation. *See id.* at 10, 11. Justice Bransten

further wrote that there was no indication that Dibbs was entitled to exclusive use of the area between his apartment and where the security gate had stood, and held that "[n]othing before this Court suggests that DHCR's determination … was arbitrary, capricious or irrational." *Id.*[9] The Appellate Division affirmed. *See Dibbs,* 6 A.D.3d at 232, 774 N.Y.S.2d at 327.

This Court cannot possibly consider plaintiff's takings claim based on the DHCR's determinations in these orders without reviewing the merits of Justice Bransten's decision because the two are "inextricably intertwined." *See Feldman,* 460 U.S. at 475, 103 S.Ct. 1303. Dibbs' takings claim can succeed " 'only to the extent that the state court wrongly decided the issues before it' and is thus barred by *Rooker–Feldman." Vargas,* 377 F.3d at 208 (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). Therefore, any claims against the DHCR defendants that are not time-barred must be dismissed because the Court lacks subject matter jurisdiction to resolve them.[10]

▪ Plaintiff's claims against the DOB defendants must also be dismissed for failure to state a claim. Plaintiff's § 1983 claim here appears to stem from alleged procedural and substantive due process and equal protection violations based on the procedure the DOB utilized in issuing a building permit in December 2001 allowing plaintiff's apartment to be modified.

the dangerous conditions, *id.* ¶ 252, which Dibbs brought to the DHCR's attention in June 1993, *id.* ¶ 51, and on DHCR inspectors' visits, *see id.* ¶¶ 195–96, during the handling of the harassment complaint, which took place in 1993–94; this claim is then also time-barred.

9. Justice Bransten also found that the unrelated September 14, 2000 order merely eliminated a monthly rent reduction because of restoration of services, and that Dibbs had not

established that that decision was arbitrary or capricious. Nov.2002 Bransten Decision, at 11.

10. To the extent plaintiff invokes this Court's mandamus powers, requesting that the Court "order the DHCR to provide for prompt and Constitutionally adequate hearings," Compl. ¶ 254, such request is denied as this Court has already determined Dibbs has no right to such a hearing in this context. *See Dibbs,* 1999 WL 1201709, at *7.

*See Compl.* ¶¶ 18, 125, 128–29, 131, 134, 136, 211, 212, 217, 219–21, 223, 225–28, 255–56. Causes of action based on due process violations require "the existence of a federally protectable property right and the denial of such a right in the absence of either procedural or substantive due process." *Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir.1999). "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense." *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995). To prevail on this claim, plaintiff must demonstrate that the DOB "so grossly abused their authority that they deprived him of a constitutionally protected property interest." *Rackley v. City of New York,* 186 F.Supp.2d 466, 479 (S.D.N.Y.2002). Gross abuse occurs "only where the government action challenged is so 'outrageous' and 'arbitrary' that it 'shocks the conscience.'" *Id.*

■■■ As best the Court can discern, plaintiff's substantive due process claim is based on his argument that allowing "major construction" while plaintiff lives in the apartment "subjects the tenant to undue and unnecessary hardship and dangerous conditions." Compl. ¶ 219. Assuming plaintiff's property interest was implicated by the DOB's issuance of a permit that allows for the modification of his rented apartment, and assuming further that plaintiff is expected to live in the apartment during the process, such an allegation, while describing an inconvenience, fails to describe any actions on the part of the DOB that "shock the conscience" because of their arbitrariness or outrageousness. *See Rackley,* 186 F.Supp.2d at 479.

Procedural due process "require[s] notice and an opportunity to be heard prior to the deprivation of a property interest...." *United States v. Premises & Real Prop. at 4492 S. Livonia Rd., Livo-*nia, N.Y., 889 F.2d 1258, 1263 (2d Cir.1989). Plaintiff's procedural due process claim appears to be based on the allegation that that he did not receive notice that a permit was being approved or an opportunity to object to it prior to its issuance by the DOB, and that the DOB did not directly send plaintiff a copy of the permit or notice on how to appeal it. *See* Compl. ¶¶ 131, 211, 227.

Plaintiff, however, admits in his Complaint that he received a copy of the permit and the plans in mid-December 2001 from his landlord. *See id.* ¶ 126. In her November 19, 2002 decision, Justice Bransten confirms such receipt, writing that "[w]ithin a day after issuance of the work permit, Dibbs was sent a copy of the plans, which he later received." Nov.2002 Bransten Decision, at 12. Plaintiff also recognizes that he had the opportunity to appeal such permit to the BSA within thirty days of its issuance and admits he failed to do so. *See* Compl. ¶¶ 130, 133. Had he so appealed, plaintiff would have been entitled to an Article 78 proceeding in an appropriate New York state court. *Id.* ¶¶ 130, 133. Instead, plaintiff chose to bring an Article 78 proceeding without first appealing, and the New York court subsequently refused judicial review. *See* Compl. ¶ 133.

■■■ "[I]n considering whether defendants have failed to afford plaintiffs due process ... the Court evaluates the entire procedure, including the adequacy and availability of remedies under state law." *Liotta v. Rent Guidelines Bd. for the City of New York,* 547 F.Supp. 800, 802 (S.D.N.Y.1982). Having so reviewed, the Court finds that, in light of the pre- and post-deprivation remedies available to plaintiff, which he acknowledges in his Complaint, and which allow for a quick appeal and subsequent state court review, plaintiff has failed to state a procedural

due process claim. *See, e.g., Iwachiw v. New York State Dep't of Motor Vehicles,* 299 F.Supp.2d 117, 122–23 (E.D.N.Y.2004) (finding plaintiff's pre- and post-deprivation remedies, which included ability to appeal an administrative determination to the appeals board and then prosecuting an Article 78 proceeding, were sufficient to defeat procedural due process claim).

The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person.'*" *Bizzarro v. Miranda,* 394 F.3d 82, 86 (2d Cir.2005) (alteration in original) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir. 1980)). Additionally, equal protection claims can succeed "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

 Plaintiff's equal protection claim liberally construed appears to be that he stands in a similar position to that of the landlord and therefore should have been included in the permit approval process from the application point forward, instead of merely having the ability to appeal an issued permit after the fact. *See* Compl. ¶¶ 223–25. However, plaintiff fails to allege that there is no rational basis for differentiating between him, as a tenant,

and the landlord in the permit approval process or that any such differentiating was intentional, *see Vill. of Willowbrook,* 528 U.S. at 565, 120 S.Ct. 1073; *State Police For Automatic Ret. Ass'n v. DiFava,* 317 F.3d 6, 15 (1st Cir.2003), let alone that he was subject to different treatment based on any of the aforelisted impermissible considerations. *See Bizzarro,* 394 F.3d at 86.

In sum, plaintiff's Complaint fails to state a § 1983 claim against the DOB defendants and therefore the DOB defendants' motion to dismiss is granted.

 Finally, plaintiff's claims against Justices Lobis, Huff, and Bransten of the Supreme Court of the State of New York, New York County, must be dismissed under the doctrine of absolute judicial immunity. "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). The only prerequisites to judicial immunity are that the judge be performing a judicial act or one that is judicial in nature and that the judge not act in the clear absence of all jurisdiction. *See id.* at 11–12, 112 S.Ct. 286. Here, Justices Lobis, Huff, and Bransten were clearly acting within the scope of the authority granted to them by the New York State Constitution, Article VI when ruling on Dibbs' previous actions, and additionally all actions allegedly taken by them, as described in plaintiff's Complaint and *supra,* were of a judicial nature, meaning such actions are normally performed by a judge, and the parties dealt with the Justices in their judicial capacity.[11] *See*

---

**11.** To the extent Dibbs requests injunctive relief against the Justices, such claims must also be dismissed because he has failed to allege the violation of a declaratory decree or the unavailability of declaratory relief. *See* 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omis-

sion taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."); *see also Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999) (per curiam).

*Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Accordingly, Justices Lobis, Huff, and Bransten are entitled to absolute immunity, and the claims against them must be dismissed.

In closing, due to the apparent frivolousness of the instant action, plaintiff is warned that should he continue to file actions against the aforementioned defendants based on the events set forth herein he may be barred from filing any future actions in this Court without first obtaining leave of the Court, pursuant to its powers under 28 U.S.C. § 1651(a). *See MLE Realty Assocs. v. Handler,* 192 F.3d 259, 261 (2d Cir.1999).

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss the Complaint. Plaintiff's cross-motion to stay this federal action pending the outcome of his state appeal is denied as moot given the April 13, 2004 Appellate Division decision affirming Justice Bransten.[12] *See Dibbs,* 6 A.D.3d at 232, 774 N.Y.S.2d at 327. A Pre–Trial Conference in this action including plaintiff and the remaining landlord defendants who did not participate in the current motion shall occur on March 22, 2005 at 3:00 p.m. in Courtroom 705, 40 Centre Street.

It is **SO ORDERED.**

---

12. Plaintiff's cross-motion for an order tolling the statute of limitations to allow him to amend his Complaint in response to the Appellate Division decision is also denied as plaintiff has failed to articulate any legal basis for such request and, in any event, this Court lacks subject matter jurisdiction over any challenge to such decision.