Yashua Amen SHEKHEM'
EL–BEY, Plaintiff,

v.

The CITY OF NEW YORK; Rudolph W. Giuliani, Mayor of the City of New York; Bernard Kerik, Commissioner of the New York City Department of Correction (DOC); Carl Dicarlo, Assistant Commissioner of Trials and Litigation, DOC; Luis R. Burgos, Jr. Deputy Commissioner for Equal Employment Opportunity, DOC; Jack W. Louden, Supervising Attorney for DOC; Edward Kurianski, Commissioner of Investigations, City of New York; Rose Luttan Ruben, Chief Administrative Law Judge (Chief ALJ) of the Office of Administrative Trials and Hearings of the City of New York (OATH); Diedra L. Tompkins, Administrative Law Judge (ALJ) of (OATH); in their official and/or individual capacities, Defendants.

No. 00 Civ. 9260(JES).

United States District Court,
S.D. New York.

March 7, 2006.

Yashua Amen Shekhem' El–Bey, New York, NY, Plaintiff pro se.

Michael A. Cardozo, Corporation Counsel of the City of New York, New York, New York, for Defendants, Michael Emanuel Delarco, Assistant Corporation Counsel, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, Senior District Judge.

Plaintiff *pro se* Yashua Amen Shekhem' El–Bey ("plaintiff" or "Mr. El–Bey"), a former New York City Department of Correction ("the DOC" or "the Department") officer, brings this action against various defendants including the City of New York, multiple DOC employees ("the DOC Defendants"), and other individual New York City Officials ("the City Defendants") (collectively "defendants"). Mr. El–Bey was terminated from his position with the DOC after filing false tax documents. His Third Amended Complaint ("El–Bey Compl.") states seventeen causes

of action, arising under 42 U.S.C. §§ 1981, 1983, various provisions of the United States and New York State Constitutions, New York State Human Rights Law, and New York City Human Rights Law. Plaintiff, who identifies himself as "Moorish–American," alleges that the defendants discriminated against him based on his race ("so called black"), color ("Olive Swarthy Brown"), religion (Islam), and national origin ("Moorish–American"). He further alleges that defendants violated his due process rights prior to, during, and following his termination from the DOC. Defendants move to dismiss all of plaintiff's claims. Plaintiff opposes these motions and cross-moves for summary judgment in his favor on all claims. For the reasons set forth below, the Court grants defendants' motions to dismiss plaintiff's Third Amended Complaint in its entirety and denies plaintiff's cross-motion.

## BACKGROUND

Plaintiff began working as a correction officer for the New York City DOC in June 1983. *See* El–Bey Compl. ¶ 24. In December 1993, plaintiff submitted to DOC a tax document entitled "Certificate of Exemption from Withholding In Lieu of Form W–4" claiming that he was exempt from any income tax withholding. *See id.* ¶ 42. This document was accepted by the DOC and no income tax was withheld from plaintiff's wages from 1994 through 1996. *See id.* ¶¶ 43, 75, 129. In 1996 the City of New York and the DOC conducted an investigation which identified roughly 1300 City employees claiming excessive tax exemptions or tax-exempt status, including plaintiff. *See id.* ¶¶ 46, 47, 129. On August 27, 1998, the DOC filed disciplinary charges against plaintiff for (1) filing a tax form containing false/fraudulent information; (2) violating and disclaiming his constitutional Oath of Office; and (3) filing false information with the knowledge or belief that DOC would file these instruments with the IRS. *See id.* ¶ 68; *id.,* Ex. K.

Though never mentioned in Mr. El–Bey's complaint, the DOC, prior to charging him with the 1998 tax violations, had occasion to take numerous other disciplinary actions against plaintiff. From 1995 to 1997, Mr. El–Bey was characterized by the DOC as a chronic absentee, charged with various sick leave violations, and placed on unpaid, involuntary medical separation leave. *See El–Bey v. City of New York,* 151 F.Supp.2d 285, 290–92 (S.D.N.Y.2001) (Sprizzo, J.); Defs.' Notice of Mot., Ex. 1. These actions followed plaintiff's multiple and extended absences from work; noncompliance with DOC sick leave directives, and refusal to cooperate with DOC officials or submit to required medical examinations. *See id.* Also absent from plaintiff's Third Amended Complaint is any mention of the three related lawsuits filed by plaintiff in this Court—*El–Bey v. City of New York,* 98 Civ. 2745, *El–Bey v. City of New York,* 97 Civ. 4177, and *El–Bey v. City of New York,* 99 Civ. 1249—asserting claims against many of the same defendants named in this action. Those actions challenged the DOC's sick leave policies and plaintiff's suspension from employment with the DOC, and raised due process and equal protection claims under the United States and New York State Constitutions. This court dismissed those claims in their entirety in May 2001. *See El–Bey,* 151 F.Supp.2d 285.

As a result of the tax violation charges brought against plaintiff in 1998, he was suspended without pay from the DOC in June 1999, was subsequently placed on modified duty assignment, and on February 8, 2000 a disciplinary hearing was held at the Office of Administrative Trials and Hearings ("OATH"). *See* El–Bey Compl. ¶¶ 103, 105, 114. On March 14, 2000, Ad-

ministrative Law Judge Diedra L. Tompkins ("ALJ Tompkins") found plaintiff guilty of, among other violations, the crime of perjury under Penal Law sections 210.10 and 175.30 for submitting a Certificate of Withholding in Lieu of W–4 form containing false information. *See* Defs.' Notice of Mot., Ex. 1. Based on this violation and on plaintiff's flagrant disregard for other DOC rules and regulations, ALJ Tompkins recommended to the Commissioner of the DOC that plaintiff be terminated from his employment with the Department. *See id.* Former DOC Commissioner Bernard Kerik adopted this recommendation, terminating plaintiff on April 27, 2000. *See* El–Bey Compl. ¶ 149.

On August 17, 2000, plaintiff brought an Article 78 proceeding in New York State Supreme Court challenging the DOC's decision to terminate his employment. *See* Defs.' Notice of Mot., Ex. 2. Plaintiff claimed, *inter alia*, that he was wrongfully discharged from employment with the DOC and that his due process rights were violated at the OATH proceeding. *See id.* That case was transferred to the Appellate Division, First Department, which on May 9, 2002 denied plaintiff's petition in its entirety. *See* Defs.' Notice of Mot., Exs. 3, 4. The Appellate Division found that "[n]o basis exists to disturb respondent's findings of credibility" and the "penalty of dismissal does not shock our sense of fairness." *See id.,* Ex. 4. Mr. El–Bey did not appeal that decision.

Plaintiff filed the instant suit on December 6, 2000. At the heart of plaintiff's verbose and often confusing complaint appears to be his contention that the defendants, individually and in "concerted activity," singled him out and treated him differently based on his race, color, religion, and national origin. *See* El–Bey Compl. ¶¶ 191, 193, 199, 203. Plaintiff also contends that defendants were moti-

vated by these factors in bringing disciplinary charges against him for his tax violations, *id.* ¶¶ 88, 139, 174, 175, 191, 226, in the manner in which they conducted his OATH proceeding, *id.* ¶¶ 117, 119, 191, 228–34, and in deciding ultimately to terminate him, *id.* ¶¶ 149, 150, 176, 191. Plaintiff further alleges that defendants deprived him of his due process rights in the manner in which they raised disciplinary charges against him and conducted his OATH proceeding. *Id.* ¶¶ 119, 126, 131, 132, 155, 159, 166, 228–34. Finally, he claims that defendants violated his right to free speech by terminating him in retaliation for his having filed suits against them in the past. *See id.* ¶ 252.

Defendants deny all of plaintiff's allegations and further argue that the Rooker–Feldman doctrine bars plaintiff from raising any of his due process claims, based on the Article 78 proceeding. Additionally, defendants argue that qualified and absolute immunity bar the plaintiff from bringing claims against some defendants.

## DISCUSSION

In considering a motion to dismiss, a court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *Rombach v. Chang,* 355 F.3d 164, 169 (2d Cir.2004). Dismissal is only appropriate where it "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000). In deciding a motion to dismiss, the Court may consider documents referenced in the complaint, documents that the plaintiff relied on in bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002).

■ The Court has the duty to read the pleadings of a *pro se* plaintiff liberally and interpret them to "raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). A *pro se* plaintiff is not, however, exempt from complying with the relevant rules of procedural and substantive law. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983).

### A. Due Process Claims

Mr. El–Bey alleges, in his second, third, fourth, fifth, and sixth causes of action, that his due process rights were violated by: 1) defendants' delay in filing disciplinary charges against him; 2) the prejudice exerted by Mayor Guiliani on plaintiff's OATH proceeding; 3) the prejudice of ALJ Tompkins during plaintiff's OATH proceeding; 4) the city's failure to ensure an impartial ALJ; and 5) the adjudication of federal law matters at his OATH proceeding. *See* El–Bey Compl. ¶¶ 225–34. The court dismisses each of plaintiff's due process claims as they are barred by the doctrine of collateral estoppel, based on the Appellate Division's decision in plaintiff's Article 78 proceeding.[1]

■ Under the doctrine of collateral estoppel, or issue preclusion, an issue which has been actually and necessarily determined by a court of competent jurisdiction may not be relitigated in a subsequent case by a party to the prior litigation. *Montana v. United States*, 440 U.S.

147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). A federal court assessing the preclusive effect of a prior state court judgment must give such judgment the same preclusive effect it would have under the law of the state in which it was rendered. 28 U.S.C. § 1738; *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996). Under New York law, collateral estoppel prevents a party from relitigating a previously-determined issue where: 1) the issue in question was actually and necessarily decided in a prior proceeding and 2) the party against whom the issue is asserted had a full and fair opportunity to litigate the issue in the first proceeding. *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455–56, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584, 588 (1985).

■ The due process claims raised by plaintiff in his third amended complaint were previously litigated and decided against him in his Article 78 proceeding. *See* Defs.' Notice of Mot., Ex. 4. Mr. El–Bey claimed, in his Article 78 Petition, that the disciplinary charges brought against him by the DOC were time barred by virtue of the 18–month statute of limitations and that his due process rights were violated "in the manner in which the hearing at OATH was conducted." *See id.* ALJ Tompkins dismissed plaintiff's petition, finding that the disciplinary charges were not time barred and that there was

---

1. Defendants argue that the Rooker–Feldman doctrine bars this court from exercising jurisdiction over plaintiff's due process claims. *See* Defs.' Mem. at 8–11; Defs.' Reply Mem. at 3–4. The recent Supreme Court case, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), decided after defendants filed their motion to dismiss and reply memorandum of law, sheds new light on the applicability of the Rooker–Feldman doctrine to this case. *Exxon Mobil* firmly holds that Rooker–Feldman has no applicability where,

as in this case, the federal court proceeding is commenced prior to the state court judgment having been rendered. "The Rooker–Feldman doctrine ... is confined to cases of the kind from which it acquired the name: cases brought by state court losers complaining of injuries caused by state-court judgments rendered *before* the federal district court proceedings commenced.... When there is parallel state and federal litigation, Rooker–Feldman is not triggered simply by the entry of judgment in state court." *Id.* at 1522–26.

otherwise no reason to disturb plaintiff's termination. *See* Defs.' Notice of Mot., Ex. 2. Plaintiff had ample opportunity to, but never did, appeal ALJ Tompkins' decision in the Article 78 proceeding. Plaintiff was afforded a full and fair opportunity to litigate his due process claims and is barred from relitigating the issue in this Court. *See Vargas v. City of New York*, 377 F.3d 200, 208 (2d Cir.2004) (finding, under similar circumstances, that an Article 78 proceeding "provides a meaningful remedy where violations of due process by a local governmental entity are alleged." (*citing Gudema v. Nassau County*, 163 F.3d 717, 724–25 (2d Cir.1998))). Accordingly, the due process claims must be dismissed.

## B. Equal Protection Claims

Mr. El–Bey further alleges that defendants violated his right to equal protection of the law by treating him differently from non-Moorish-American employees of the DOC. Plaintiff alleges, specifically, that while numerous non-Moorish-American correction officers who filed fraudulent tax documents were permitted to retain their positions with the DOC, he was terminated for this violation. *See* El–Bey Compl. ¶¶ 173–85, 223, 224.

■ The Equal Protection Clause of the Fourteenth Amendment commands that all persons similarly situated be treated alike. U.S. Const. amend XIV; *see City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To state a claim for an equal protection violation based on selective enforcement, a plaintiff must show that 1) he was selectively treated with respect to others similarly situated and 2) such selective treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir.1994) (*quoting LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir.1980)).

■ Mr. El–Bey has failed to state a claim for selective enforcement because he does not identify a single correction officer, similarly situated to himself, who was treated more favorably by defendants. *See id.*, 40 F.3d at 590. Plaintiff correctly asserts that other DOC employees were permitted to keep their jobs despite having filed fraudulent tax documents. However, not one of the DOC employees cited in plaintiff's complaint was even remotely similarly situated to plaintiff with respect to the disciplinary action taken by the DOC. Mr. El–Bey, in addition to having filed fraudulent tax documents, was found guilty of numerous other disciplinary violations while employed with the DOC, *e.g.*, countless sick leave violations and excessive absenteeism. *See El–Bey*, 151 F.Supp.2d at 290–92. Nowhere does the complaint allege that even one of the purportedly similarly situated corrections officers was guilty of committing a single act of misconduct other than filing fraudulent tax documents. That plaintiff, whose misconduct so far surpassed that of his co-workers, was terminated from the DOC while they were permitted to maintain their positions hardly amounts to a showing of selective enforcement. Given Mr. El–Bey's failure to identify a single similarly situated employee who was treated differently, his Equal Protection claim must be dismissed. *See El v. City of New York*, 2002 U.S. Dist. LEXIS 12431, at *12 (S.D.N.Y. June 18, 2002) (dismissing § 1983 claim where plaintiff failed to identify similarly situated non-Moorish American correction officers).

## C. Title VII and § 1981 Claims

In his seventh and sixteenth causes of action, plaintiff alleges that his termination from DOC constituted disparate treatment under Title VII and § 1983 because the department discriminated against him based on race, color, religion, and national origin. *See* El–Bey Compl. ¶¶ 233, 234, 255, 256. As with his Equal Protection claims, plaintiff is required, in order to set out a prima facie case for disparate treatment, to show that at least one similarly situated person was treated differently than he. *See Smith v. Xerox Corp.,* 196 F.3d 358, 370 (2d Cir.1999). This Court has already determined that plaintiff failed in his complaint to make such a showing. Accordingly, Mr. El–Bey's disparate treatment claims must also be dismissed.

## D. First Amendment Retaliation Claim

■ Plaintiff's fifteenth cause of action alleges that his termination from the DOC was in retaliation for his having filed previous lawsuits against the Department, in violation of the First Amendment. *See* El–Bey Compl. ¶¶ 251, 52. In order to state a prima facie case for First Amendment retaliation, plaintiff must make non-conclusory allegations that 1) his speech or conduct was protected; 2) the defendant took adverse action against him; and 3) there was a causal connection between plaintiff's exercise of protected speech and defendants' adverse action. *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001). Defendants concede that plaintiff has successfully met the first two requirements, but argue that he has failed to allege the requisite causal connection between his protected activity and defendants' adverse actions.

■ This Court agrees with the defendants' contention. In order to survive a motion to dismiss, a plaintiff claiming First Amendment retaliation must allege facts sufficient to support an inference that his protected conduct played a substantial part in the adverse action taken against him. *See Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir.2000). Mr. El–Bey has put forth nothing more than a single, vague and conclusory allegation that the DOC's decision to terminate him somehow resulted from his having filed previous lawsuits against the defendants. *See* El–Bey Compl. ¶¶ 197, 252. What is clear from the record submitted to this court is that plaintiff committed numerous disciplinary violations while employed by the DOC, proceeded to submit fraudulent tax documents to the Department, underwent an OATH proceeding which resulted in a recommendation that he be terminated, and subsequently was terminated by the DOC. Absent any explanation as to how or why his termination resulted not from the disciplinary violations but instead from his having filed lawsuits many months prior to his termination, plaintiff's conclusory allegation cannot suffice to raise the necessary inference of a causal connection.

■ Furthermore, even assuming, arguendo, that plaintiff had successfully alleged the requisite causal connection and thereby established a prima facie case of retaliation, his claim would nonetheless fail. Defendants have met their burden of articulating a legitimate, non-retaliatory reason for plaintiff's termination from the DOC, *i.e.,* Mr. El–Bey's having filed fraudulent tax documents as well as committing countless other violations over the term of his employment with the DOC. *See Treglia v. Town of Manlius,* 313 F.3d 713, 721 (2d Cir.2002) (shifting burden to defendants to articulate non-retaliatory explanation for challenged employment decision once plaintiff established prima facie case of retaliation). Because plaintiff has made no allegation that this non-retaliatory reason for his termination was pretextual, his

claim of First Amendment retaliation would fail even had he succeeded in stating a prima facie case. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001) (shifting burden back to plaintiff to provide evidence that the proffered explanation was pretextual once defendants articulated non-retaliatory reason for employment action).

## CONCLUSION

Plaintiff has failed to state a claim for relief for due process or equal protection violations, disparate treatment, or First Amendment retaliation, accordingly all of his federal claims must be dismissed. With no federal claims remaining, the Court declines to exercise supplemental jurisdiction over the state law claims. Defendants' motions to dismiss are granted in their entirety, and plaintiff's cross-motion for summary judgment is denied.